I don't know if I cleared that. Sure did. Where did everybody go? All right. Miss Cherry, whenever you're ready. Now we've had some loquacious lawyers this week who maybe aren't familiar with the lighting system. But when the red light turns on, that means wrap it up and then the trap door opens. So welcome. Thank you. Don't worry. I've got the light assistant. May it please the court. My name is Catherine Cherry. I'm from the Solicitor General's office. I was up to state and Mr. Babin in this matter. To the state's knowledge, the Supreme Court has not approved a federal court in joining a state criminal proceeding on bad faith grounds for about 50 years. And this court has taken the same route, except in extraordinary circumstances. In cases where the judge and the law enforcement officers and the prosecutor were racist, where they attacked defense counsel knowing that there was no merit to those attacks, where there were a series of information and evidence that was stolen, that was given to the public. This case is not comparable to those cases. This case should be dismissed so the state criminal proceeding can proceed for at least four reasons. The first is that the district court erred in finding that the district attorney was retaliating for Netflix's exercise of its First Amendment rights. If a federal plaintiff can claim that they've suffered a First Amendment harm simply because they filed a pleading that wasn't even successful and the prosecutor acted in response to that, that exception to Younger will swallow the rule. In addition, the Supreme Court held in United States v. Goodwin that these kinds of pretrial pleadings and pretrial motions are expected between prosecutors and defendants in criminal cases and there shouldn't be an assumption that there's retaliation when a prosecutor responds to these motions. And that goes to the second point, which is the district court's finding that the district attorney was retaliating because he brought the 4325 charge, which increases Netflix's criminal exposure, eliminates the protections of prosecutorial discretion, which the Supreme Court explicitly found in United States v. Goodwin, is essential to the role of a prosecutor. Again, having a judge look at these prosecutorial decisions pretrial is putting a prosecutor in a situation where they either have to bring all of the charges up front regardless of how well they know the case or they risk having a bad faith assessment later on when they change the nature of the charges. When you're looking at whether a prosecution is in bad faith, so one thing you look at is whether the prosecutor had any sort of realistic hope of obtaining a valid conviction. Is the nature of that inquiry, is that subjective? Is that objective? I think that the retaliatory, the decision to retaliate is subjective, but courts have looked at that via objective means. So one of the elements is, is there hope of a conviction? Right. You still have to look at what the prosecutor is thinking, but you can look at these objective factors to determine that. For instance, here the district court found that just one charge or one indictment was not likely to lead to a conviction, and that was the Jane Doe indictment. There are a few problems with that. First of all, the district court was relying solely on Netflix's statement, an unsworn statement that Jane Doe was over the age of 18. But as the affidavit shows that Netflix passed to the state later, Jane Doe was actually 18, and she wasn't credited in the credits. And if you Google it, she's not the person who's listed as Sweeney Swag from the movie. And so what is occurring here is that the district court is finding something as a matter of law that actually wasn't proved at all. And even if there were some evidence that Jane Doe was over 18, it's not the district attorney's job to go to the defendant and ask for exculpatory information or to trust the defendant when they say they have exculpatory information when they're deciding what to charge or whether to charge. We're at the, as you know, we're at the preliminary injunction stage. The amicus brief filed by FIRE says that we should, quote, take an expansive view of the facts alleged because we're at the preliminary injunction stage. What is the state's view on that? I mean, we're still at the younger v. Harris inquiry, right? And if you look at any of the Supreme Court cases or this Court's cases, there's no distinction between a preliminary injunction and a permanent injunction, including if you look at the Smith case, and there's a dispute between me and my friend on whether there's a major motivating factor under Wilson or there's the at least in part factor under, I'm sorry, major motivating factor under Wilson v. Thompson or the kind of at least in part factor. Those were both, both of those cases were at the preliminary injunction stage. And so both of those cases required a strong showing that the prosecutor had a retaliatory, had a, I'm sorry, intended to retaliate or intended to bring charges without any care as to whether or not they led to a conviction. But really the problem is that you still are violating federalism or you're still ignoring the state court's ability to address these constitutional issues, to address these procedural issues, even when you have a preliminary injunction. And can press releases from prosecutors about a case, can that be probative of bad faith? Certainly that can in some situations, Your Honor. And in this case, though, the press release is actually a sign of good faith because as the district attorney stated in his deposition, he was asked by Variety, Fox News, I think I have a list here somewhere, several news companies to give an interview about his prosecution of Netflix. And all he did was put out a press release that said, I think that they're guilty. I'm going to prosecute them even if they're a big company. So in comparison, for example, in the Chauvy-Garrison case for this court, and this was the one where a prosecutor believed that he was, he had found the real killer of President Kennedy. He arrested the would-be defendant in front of the press. He made sure that there was television coverage. He made sure that everyone was paying attention to this case, and I think he even had a book deal. Here, the district attorney actually refused several opportunities to make this a bigger deal than just a normal prosecution. I think also when you look at the bad faith inquiry, you're looking at things such as, you know, does it look like the district attorney wanted to cause Netflix problems? Did it look like the district attorney wasn't really interested in the conviction at the end but wanted Netflix to have to spend money or Netflix to have to explain itself to the public? Here, the district attorney filed no pleadings. He didn't require any kind of grand jury discovery. The only thing that was happening was waiting for the response or the hearing to Netflix's pretrial motion for habeas corpus. In a case like this where you have two parties, they're cooperating on when to have the hearing. I think in one case, Babin or the district attorney agreed to push the hearings by six months. This is the record at 1543. They entered into a cooperative agreement when Netflix went to federal court to pause the criminal prosecution. That's at 505 to 506. The interactions were amicable between the two, and Netflix hasn't disagreed with that. My apologies, the press release was the only statement. He was approached by Rolling Stone, Hollywood Reporter, Variety, and Fox News. That's the record at 2226. These are all signs that the prosecutor is behaving professionally. This is not a case where a prosecutor is taking advantage of the fact that Netflix is big and popular and trying to get interviews and things like that. He's just treating this like a normal prosecution. Another, I think one of the biggest issues with bad faith that the district court focused on is this Jane Doe indictment. As we stated, this was just Netflix's unsworn statement. The district court focuses on the fact that Netflix offered to give the district attorney proof of Jane Doe's age, but in any conversation between a prosecutor and a criminal defendant, the criminal defendant will offer proof that they're innocent. The district attorney doesn't have to take them at their word or hold their prosecution until they get the evidence. In this case, that's a good thing because Netflix wasn't able to provide reliable proof until, I think, September 2022. That's at the record at 1601-02. First, Netflix provided a holographic worksheet, part of which was in French. That's at 1449-50. Here, as the district attorney said in the briefing, the name of the person on the document was not the name of the person when you look up this movie on IMDb. Really, the district attorney would have had to trust Netflix that this was the person. Also, in the credits, which the district attorney went through several times, this person who's on the holographic worksheet is not listed there. In the affidavit that the state finally received around 2228-2229, the affidavit clarifies, and this is the affidavit by the actors, that she wasn't credited in the film at all. It also clarifies that she was exactly 18. Netflix really avoided criminal charges by the skin of its teeth. You can see that. That's at the record at 2518. In terms of whether or not a prosecutor is completely uninterested in the conviction, this is just not the type of case that this court has looked to or the Supreme Court has looked to. For example, in the Duncan Brute Perez case, that's the one where two boys pushed each other and the young black man was arrested multiple times for assault charges, even though this was just a mild push and there was no sign of any kind of injury. Another one is in the Universal Amusement Company versus Vans case. That's this court from 1977. There, the police seized all of the equipment in a movie showing booth, despite the fact that they were just claiming that one of the movies that the company showed was obscene. So there were unnecessary arrests. The prosecutor refused to indict the defendant so that the defendant couldn't even protect their rights. These are the kinds of probably blatantly illegal but certainly unprofessional conduct that these prosecutors are doing that gives rise to an inference of bad faith. Also, in addition, as the court held in Younger v. Harris and as this court held in Daves v. Dallas County, just the merits isn't enough to get you to bad faith, even if there's a First Amendment retaliation claim. There has to be more than that. There has to be conduct that's showing that the law enforcement officer or the prosecutor has no intention of treating this as a normal prosecution. So you don't want to kind of put the two inquiries together. So the district court said there is no chance of a conviction because on the merits, Jane Doe is an adult, and on the merits, this case is not a good case because clearly this is in child pornography. But these are two separate inquiries. One is about what the prosecutor is doing outside of the realm of the merits. So is the prosecutor just arresting people randomly? Is the prosecutor using warrants that have already been thrown out by a magistrate judge? The second question is about the merits, and really it's, is it so unlikely that there's going to be a conviction that you can assume it's bad faith? It's not just, is the statute unconstitutional or something like that. My time is up. I can reserve the rest for rebuttal. Thank you very much. Mr. Bennett. Thank you, Your Honor. May it please the court. When the district court exercised jurisdiction and enjoined Lucas Babin's unconstitutional crusade against Netflix and its film cuties, it correctly construed and applied the law to a set of mostly undisputed facts. And where the facts were disputed, the district court drew its findings of fact from substantial evidence in the record, buttressed by adverse credibility determinations, made against Babin as he testified at the hearing. Under this court's standards of review, the district court's four main conclusions are entitled to substantial deference. First, that younger abstention as to counts three and four of Netflix's civil rights complaint would be inappropriate, given the perfect storm of bad faith facts evident in the record and as found by the district court. Second, that counts one and two of Netflix's complaint present a lie of controversy, despite Babin's invocation of the voluntary cessation doctrine. Three, that Netflix made the showing necessary to be entitled to a preliminary injunction. And four, that Babin failed to make his showing, such as the independent intermediary defense, to defeat Netflix's entitlement to preliminary injunctive relief. The court should affirm each of those main conclusions. I'll devote most of my presentation, I think, today to the first one, which is younger abstention. And time permitting, I'll address the others. Otherwise, we rest on our brief on those other points. I want to start first with really the question that animates the younger abstention inquiry, which is why, after 500 days of having Netflix under indictment under Section 43262, did Babin up the ante, charge Netflix not with one, but four new indictments, leaving open the distinct possibility of indicting us two more times for the two actresses he didn't charge, and then on more serious charges than he began with, despite the fact that in those 500 days, the film hadn't changed, and that nothing about the case had changed because he hadn't pursued anything in the interim. That was the district court's main inquiry as it addressed the record, and there were several factors that led the court to conclude that the reason Babin upped the ante was because he was dissatisfied with Netflix's exercise of its First Amendment rights to petition. One important thing I need to clear up, right from the start, this didn't come up in briefing, but just came up on my friend's presentation, is this was... The pretrial habeas petition is not a motion filed within existing criminal cases. It is a separate action. It was assigned its own cause number in state court. It is a completely separate trial. It is like filing a lawsuit. So it's not a pretrial motion, as it was represented earlier. It is a separate and independent lawsuit, a civil action that invokes criminal jurisdiction in Texas courts. So when we filed a separate lawsuit to challenge the indictment because it was the first indictment under Section 43262, it wasn't merely a motion in the existing criminal case. It was a separate lawsuit. Separate lawsuits are protected. Wilson itself stands for the proposition that filing a separate lawsuit is protected First Amendment activity. That's what Netflix did. Now, from that period forward, that's the red line the district court looked at. Why did things change only after Netflix petitioned for relief? To answer that question, it looked before, to Babin's conduct before the filing of the petition and compared it with his conduct after the filing of the petition. And the incongruities and the credibility determinations the district court drew from the comparison of the before and after period are what drove the conclusion on the second prong of the Wilson test that we had shown that Netflix, or excuse me, that Babin had retaliated, more likely than not, against Netflix for exercising its First Amendment rights. As you note on the chronology of all this, so your position is that Babin retaliated against your client for filing the pretrial writ of habeas corpus, right? Correct. Now, he had already charged. The initial indictment came before all that. So you're not alleging that Babin was retaliating against Netflix when he sought the initial indictment, correct? In a sense, but not in a sense that matters for purposes of younger abstention. So, exercising First Amendment rights, Babin's animus, it's in the record, it's in the press release, it's in his deposition, his intent was to make sure Cuties was criminalized and that Netflix was censored. He said that in his deposition. Page 1205 of the record, the district court repeated that in its factual findings. So, that he was on a crusade, it's in his... Page 1080 of the record, where the press release is. You're saying today, as the district court focused, the red line, as you call it, is from the filing of the writ of habeas corpus and Babin's actions in response to that moving forward. As found by the district court, correct. But the whole thing... Babin's actions before and after, if it's viewed as an entire progress, I hate to use the term because the former president uses it all the time, but it appears to be a witch hunt. And that, in turn, makes it bad faith and thus an exception to younger. Is that correct? That is correct. And the district court's factual findings, reviewable only by clear error, which Mr. Babin has not shown in this case, support that finding. Did Judge Troncali ever make a finding that Netflix's speech was actually chilled? Is that in the record anywhere? So, the actual chill point didn't come up below because the basis for the injunction was count three, which doesn't require actual chill. It's a direct First Amendment claim. For purposes of younger abstention, actual chill isn't required. That's what Wilson holds. If you look at... If we're in the realm of the exceptions to younger abstention and you're looking at a prosecution that is itself, that is, we're not looking at the merits as in younger, we're looking more at a Dombrowski-style case where it's not necessarily the underlying charges that are being challenged as unconstitutional, but the bringing of the cases, these other four cases themselves are unconstitutional, Wilson holds that that is itself chilling, and we're not going to wait around to see if it results in actual chill because if federal jurisdiction exists, we're going to take up the underlying civil rights claims and adjudicate those, that the normal presumption of unflagging authority when a federal question arises will apply under those circumstances, and those are the circumstances that the district court found here. Looking before the red line, the district court took note of the positions Babin took on the film, on the underlying case, before we sought habeas relief, filing that separate action, and found that Babin pretty clearly understood both, A, the law, 4325, knew it existed. This is in the district court's factual findings between 1645 and 1649. The film itself contains no child pornography. The district court watched the film, reached that conclusion. He then looked to what Mr. Babin said about the film, yes, about Jane Doe, but particularly that he didn't take issue. During a meeting in October of 2020, when he meets with Netflix's attorneys, Mr. Babin makes a direct representation, I'm not concerned with that scene, and in fact, at the injunction hearing, and the district court cites this, I believe on page 2228 of the record, Mr. Babin says, I was not concerned about that particular scene at that particular time. To be clear about what that means and what the implications of that are and what the district court found entirely incredible is that Tyler County's criminal district attorney watched the film, saw something that should have jumped out to him as child pornography in September of 2020 and left it unindicted for 500 days. And when asked repeatedly, why did he go back after the fact, he couldn't muster anything other than, I inspected the image, I inspected the image. Well, in between those two times, there is one really easy explanation, and that's the exercise of First Amendment rights to petition. And Mr. Babin couldn't muster any explanation for how he missed it for those 500 days. I want to also point to Lowry. That was sort of another important pivot point for the district court, and one that's important for at least three reasons. One, Lowry, despite what's been argued in the briefing, was never a motivation for Babin dropping the charges under the first indictment and then bringing four more serious ones. In fact, what Babin said on the record to the district court was, I was never going to dismiss the charges despite Lowry. You'll remember, Lowry is the state court case from the First District Court of Appeals in Texas that invalidates 43262, both as being an impermissible content-based restriction, but more importantly, and this is the second and third points about why Lowry weighs so heavily here, on overbreadth grounds. And in discussing overbreadth, the Court of Appeals mentions our film and my client twice, once to acknowledge that the prosecutor in that case referred to Cuties as having something no prosecutor would ever admit, anything that constitutes real child pornography would ever have, and that is social, artistic, political, et cetera, public value. That's one. The second is the next conclusion that the First District Court of Appeals reaches, and that is it reaches for Netflix's film and Netflix users as an example of overbreadth. Now, it's only going to do that if it recognizes that the film itself is entitled to First Amendment protection. No court who would cite something for overbreadth reasons would cite child pornography, real child pornography, which receives no First Amendment protection, as an example of overbreadth. That is why the First District Court of Appeals reached for Cuties and said, if the state is correct about how broadly this applies, even Netflix's users could be prosecuted for watching Cuties. That should have put Mr. Babin on notice immediately that there are real First Amendment concerns with pursuing against this film specifically, and he ignored every single one of those indications when he says Lowry had nothing to do with my prosecution. And I'll just point to the specious grounds of that statement Lowry was narrower. The indictment in Lowry was narrower than the one he brought against Netflix. Possession was what was at issue in Lowry. Promotion, a much broader term, was what was at issue against us. And the First District Court of Appeals invalidated 43-262 on possession, narrower possession grounds. Babin ignored that, too. The next facts that animated the district court's conclusion about why this was a bad-faith prosecution was the approach Babin had to take to get all of the indictments he obtained from the grand juries, which was to distort and misrepresent the film during those grand jury proceedings. The district court made an express finding. It used specific examples from the film. Untitled 100, that's under seal with your honors. I'd commend it to you if you haven't seen it already. Compare the three-and-a-half-minute scene that precedes and succeeds the seven seconds that he showed the grand jury, but that was one of the specific clips that the district court cited. To get the first indictment, Mr. Babin had to misrepresent the film. To get the second, third, fourth, and fifth indictments, he had to do the same thing. The district court said it was skeptical at best. Those are the words on page 1649 that Mr. Babin had actually shown the grand jury what he needed to show them. There's some difference in the briefing about the requirement to show exculpatory information to a grand jury. That's not what we're talking about here. To even have evidence of probable cause, you have to put whatever it is the prosecutor's calling child pornography in context. That's state v. Bowles. The ordinary context of what you're accusing... The context of what you're accusing as child pornography must be shown. He didn't show it. All of these facts, among others, including the fact that... the district court's findings, page 1645, that there is absolutely no child pornography, the probable cause analysis Your Honor alluded to during my friend's presentation, all of them militate against... certainly against reversal, but for the district court's conclusion that Netflix met its burden to show that the primary motivating factor was retaliation. Now, this gets to a point Your Honor made earlier about how do we deal with the procedural posture here. There's nothing in Smith, the major motivating factor test, that says that Rule 65 doesn't apply when younger abstention issues are raised at the preliminary injunction stage. I'm not aware of that case because it doesn't exist. Younger itself was a final judgment. It wasn't a preliminary injunction. Dombrowski was a preliminary injunction. Wilson was a preliminary injunction. And so what it said was there's a relaxed test. Smith in footnote 19 cites that and says at the preliminary injunction stage, of course it's relaxed, but when you get to a trial on the merits, less deference is required. That's just a natural application of Rule 65. So there's no daylight between Wilson and Smith. They say the same thing. The fire brief we commend to the court to review about the kinds of evidence that are often relevant in this totality of the circumstances approach. But that Netflix made the showing necessary under the Wilson test on the second prong is reviewable only by clear error, and there is none, and there's certainly no legal error. So having made that showing, it became incumbent upon Babin to proffer reasons why he would have pursued those charges regardless of the retaliation, and he didn't. The district court made adverse credibility determinations about the few explanations he tried to muster and found against him. He didn't believe Mr. Babin when he said why he decided to up the ante as to Jane Doe despite everything he said before, why, despite the 500-day difference between the first indictment and the fourth, fifth, excuse me, the second, third, fourth, fifth indictments, he changed course. All of those findings, all the attempts that Babin made to explain that away, the district court found weren't credible, and credibility determinations, if clear error is already hard, they're near impossible. What my friend wants to do on the other side in trying to poke holes in the district court's findings is to attack each individual finding as though it's just fine, but that's not really the approach. This is a mosaic of bad faith, and yes, you can point to each tile and say that's not a picture and that's not a picture in a mosaic, but when you step back and appreciate the full view of all of the facts taken together as found by the district court, it actually looks like bad faith. Let me just make sure we're all on the same page. So there are a few different standards of review that are at play here. So the fact findings that you're discussing now, the district court's factual findings, are reviewed for clear error. Agreed? Yes. And the decision of that district court whether to grant the injunction and whether to abstain from exercising jurisdiction are both reviewed for abuse of discretion. Agreed? That's correct. And so... But we do review de novo whether the requirements for a particular abstention doctrine are satisfied. Correct. The court could say we grant the district court its factual findings, and then we'll conclude whether as a matter of law those meet the second standard. And I think under precedent, whether it's Wilson or Shaw or Nobby Lobby or any of the other persuasive cases that we've cited in our brief between pages 27 and 28, Rescovage, it's a district court case out of Pennsylvania, but applying Wilson, other cases, Tories from the Middle District of Louisiana, those cases all make the point that we're making here, that once those facts are found, the conclusion stands that the retaliatory animus puts us outside of Younger unless the state can provide non-retaliatory reasons, and there's a dearth of that here. I mean, it's not lost on anybody. This is a significant case, and to say that an attorney acted in bad faith is... There's some heft to that determination, and to make that finding in the abstention context when courts are understandably hesitant to intervene in state court proceedings makes it sort of doubly exceptional, I think. The Supreme Court, as you know, going on 60 years, hasn't really chimed in on the bad faith exception to Younger since the original case in 65, but there's really just kind of a dearth of bad faith findings throughout the whole federal reporter. But if you look at the extensive take... repetitive actions that Bavin took here, all over this entire thing, and that nobody else, no other district attorney in Texas did this, it's hard not to conclude that this is an exception to Younger. I certainly agree with that. Can I make two points, even though I'm out of time? One is, I appreciate Your Honor's statement about bad faith. That's why the procedural posture matters here. That's not the ultimate conclusion on affirmance here. All that's being affirmed is the preliminary injunction remains, we'll have a trial on the merits, and we'll come back for findings of fact, conclusions of law, and a final judgment with a permanent injunction or not. But no determination of bad faith is being made yet. It's just should the state court remain, stayed while we litigate to finality these issues. We think the answer to that is yes. Thank you very much. Ms. Cherry, you're back on rebuttal. All right. First, I want to talk about Lowry. Now, Netflix has been inconsistent. First, they said that in their pretrial habeas motion that unlike 4325, there are all these issues with 43266, or 262, which were shown in Lowry. And then they said later, you know, obviously 4325 is unconstitutional in light of Lowry. Now, as the district attorney made clear, in Lowry, the court specifically and repeatedly distinguishes 4325 and 43262. First, in terms of the standard, they say lewd exposition of pubic area versus lewd exhibition of genitals, and also in terms of the specific action. And that's what the court in Lowry said, is we're only talking about Lowry's specific charge. That is not the promotion charge that Babin brought. So it does make sense, because the state has an obligation to enforce the law that the district attorney would not say without any kind of evidence or any kind of controlling case that 4325 is suddenly unconstitutional. Let me ask you a quick question about Lowry. So I think Babin admitted in his testimony that the Lowry decision did not influence his decision to drop the initial indictment against Netflix. Am I correct? Yes. But then he also referenced the Lowry decision when he later adopted this office-wide policy, saying he would not prosecute anybody under 43.262, because Lowry called constitutionality into question. So do you see any tension or inconsistency between those two positions? I don't, Your Honor. So he didn't dismiss the 40... Oh, I'm sorry. When 43.262 became an issue under Lowry, he did say, yes, this particular statute is at issue. We're going to keep our office from prosecuting under it unless it's reviewed or considered constitutional. And that was right around the time that I think the Texas Court of Criminal Appeals took on Lowry as a case. But what was happening in between was District Attorney Babin was looking at the actual pretrial habeas corpus petition that Netflix brought and finding other reasons why this particular case wasn't a good case for 43.262. I think here, really, this prosecutor is taking the caution that he ought to be taking or needs to be taking, but I don't think he needs to admit that 43.262 writ large is unconstitutional. Does the state agree that the grand jury in this case cannot really serve as an independent intermediary? Because there's not been a decision on this, the state is not prepared to take a position on it. Even though the Supreme Court has been uneager to wade into this since the canonical case back in 65, Dombrowski, but in that case, the court held that the prosecutor acted in bad faith, even though he had successfully obtained grand jury indictment. So to me, that seems kind of a pretty good clue that a grand jury can't act to immunize or be an independent intermediary. Well, I think there were a lot of things going on in Dombrowski. There were the arrests, there were the threats to bring other charges. It wasn't just him bringing this case that may be questionable on the merits. In addition, Dombrowski was younger, pulled back from Dombrowski. Dombrowski was from 1965, younger in 1971. They said that we're not going that far as we would before. And this court reiterated that in Davis v. City of Dallas. How do you respond to opposing counsel's argument about Babin waiting 500 days to bring the claims under 43.25? I'm a little confused. I don't know why it matters. This was COVID. He had murder cases going on, and this is all in the record. And Netflix was asking for additional time. So, you know, if a prosecutor is going to think more about whether he wants to prosecute, I don't understand why the amount of time is significant. I do think, though, that the idea, the district court is coming up against two strong Supreme Court precedents. The first is United States v. Williams, and that says you leave the prosecutor alone when it comes to these indictments, when it comes to these pretrial decisions, and the same as United States v. Costello. So you can't make a decision about bad faith based on elements that the Supreme Court has already said do not give rise to an inference of bad faith. Okay. Ms. Cherry, thank you. We appreciate it. Thank you to both counsel and the cases submitted.